[No. 2788.]

## GEORGE HAMMEL v. THE STATE.

1. THEFT—INDICTMENT—PRACTICE.—That the indictment alleged conjunctively that the property was taken without the knowledge " and " consent of the owner, instead of disjunctively, as in the language of the statute, that it was taken without the knowledge " or " consent of the owner, is no such defect as will authorize the trial court to sustain a motion to quash.
2. SAME—EVIDENCE.—A State's witness was permitted, over objection, to relate in his testimony what the deceased injured party told him about the loss of the alleged stolen property. *Held*, that such evidence was purely hearsay, and its admission was error.
3. SAME—FACT CASE.—See evidence held insufficient to sustain a conviction for theft from the person.

APPEAL from the District Court of Falls. Tried below before the Hon. B. W. Rimes.

The indictment charged the appellant with the theft of thirty-four dollars from the person of W. W. Glover, in the county of Falls, on the eighth day of March, 1883. The penalty imposed by a verdict of guilty was a term of two years in the penitentiary.

Jay Gammel, city marshal of Marlin, was the first witness for the State. He testified that he saw the defendant on the streets of Marlin, Texas, two or three times prior to the eighth day of March, 1883. Witness knew W. W. Glover at that time. Glover is now dead. On the Monday morning of the week of Glover's death the witness arrested him, Glover, for drunkenness. Before confining him in the calaboose, the witness took from his person one much-worn, and somewhat mutilated, ten-dollar United States currency bill, one new twenty-dollar United States silver certificate bill, four silver dollars, and forty cents in small silver change. One corner of the ten dollar bill was somewhat torn. Glover was then very drunk. When he sobered up that evening between three and four o'clock, the witness took him before the mayor for trial. The trial was postponed, and Glover gave bond for his appearance and was released, whereupon the witness, in the presence of Mayor Shelton, returned the money described, which Glover put in a small cloth tobacco sack.

The witness next saw Glover very drunk, in Lew. Stuart's saloon. This was about eight or nine o'clock that night. He claimed then to have lost his money, and requested the witness to make search for it. This part of the testimony of the witness was admitted over the defendant's objection. The witness next saw him about midnight, lying in the street very drunk, arrested him again and put him in the calaboose. The next day Mr. Glover was fined for drunkenness, and, as he had no money with which to pay the fine, the witness went with him to borrow the amount. On the day after Glover claimed to have lost his money, the witness arrested the defendant and found on his person four or five dollars in silver.

Mayor Shelton testified, for the State, that the alleged injured person, W. W. Glover, died in Marlin, Falls county, Texas, on or about the eighth day of March, 1883. A few days prior to his death the deceased, W. W. Glover, was in the town of Marlin, drinking, and was brought before the witness's court, and released on bond to answer a charge of drunkenness. Marshal Gammel, who had taken the money described in the indictment from Glover, before putting him in the calaboose, returned to him, Glover, the money described, and Glover placed that money in a small cloth tobacco sack. This took place in the presence of the witness, and the witness gave the same description of the money as that given by Gammel. The next day Glover was before the witness's court again on a charge of drunkenness. He pleaded guilty, but said that he had lost his money and thought that perhaps some of his friends had taken it. He was permitted to go to see his friends, but shortly returned and said that he could not find his money. He thought, however, that he could borrow the amount, and left the court room in charge of the officer for that purpose. He shortly returned, paid his fine, and was discharged. This was on the day after Gammel had returned him his money. The witness next saw Glover on the day following in Rinkelman's saloon, dead. Witness had his body searched and found about a dollar and a half on his person.

Lew. Stewart testified, for the State, that he knew the deceased Glover well in his life time, and also knew Anderson, who died a few days after Glover did, and for a few days prior to Glover's death had seen the defendant about the streets of Marlin. On Tuesday evening before Glover's death, at about seven o'clock, Glover, Anderson and the defendant stepped into the witness's saloon, and the defendant called for drinks. Glover and Ander-

son were very drunk, but the defendant, who was far the most sober of the three, knew very well what he was doing. The defendant had that day "beaten" the witness out of a drink, claiming that he had no money, and the witness said that he must know who proposed to pay for the drinks before he served them. The defendant thereupon asked Glover if he would not pay, and Glover replying that he would, the witness served them. After drinking, Glover poured some silver money out of a small cloth tobacco sack on the counter, and the defendant pushed a half dollar piece to the witness. Witness gave the change, and suggested to Mr. Glover, who was helplessly drunk, that he had better go and sit down. The three, Glover, Anderson and the defendant, then went back to the stove and sat down, Mr. Glover having Anderson and defendant on either side. Mr. Glover becoming still more helplessly drunk during the next half hour, Tom Elsbury and the witness's colored porter removed him to the rear of the billiard room. Witness then went to supper and returned at about eight o'clock, when Mr. Glover came up to the bar and asked of him the loan of five dollars.

Edward Parish testified, for the State, that he saw the defendant about Marlin for a day or two prior to the death of Mr. W. W. Glover. About dark, on Tuesday evening of the week of Glover's death, the witness stepped into Lew. Stuart's saloon, and saw the defendant, Glover, and a man named Anderson, since dead, sitting near the stove. Anderson and Glover were very drunk. The defendant was somewhat in liquor, but not drunk. Glover was in a drunken stupor, leaning over in the chair. As he would sway over in the chair, the defendant would push him and say: "It is time to take another drink." The witness watched them a while, and then left the saloon. Other men were about the saloon at the time, but no one was near the parties. The witness saw Mr. Glover next morning, under arrest for failing to pay a fine. He was then trying to borrow money for that purpose, and did, in the presence of the witness, obtain from Mr. Rinkelman ten dollars to be applied to the payment of the fine.

James E. King testified, for the State, that he knew the defendant, who was a stranger in Marlin. On the night of Tuesday before the death of Mr. Glover, about ten o'clock, the defendant and a tailor named Wilson entered the witness's saloon, and the defendant called for a pint of whisky. The witness gave it to him, and the defendant handed him, in payment, a

worn, mutilated ten-dollar United States currency bill, one corner of which was torn off. The witness gave him change, but before he left the defendant requested witness to return him the ten dollar bill and other change for a new twenty-dollar silver certificate bill, which he then handed the witness. The witness complied with this request, and the defendant and Wilson then left. Both defendant and Wilson were somewhat in liquor. Mr. Marlowe was in the saloon at the time.

James V. Marlowe, for the State, corroborated the witness James E. King.

Henry A. Barber testified that he saw the defendant with five or six dollars in silver on the morning of his arrest.

Captain G. A. King testified, for the defense, that on the Monday of the week of Glover's death the defendant registered at his hotel and paid for his breakfast and lodging. He exhibited then four five dollars in silver. The witness did not see him with any kind of paper money.

The motion for new trial complained of the charge of the court and the rulings upon the evidence, and the sufficiency of the evidence to support the conviction.

No brief for the appellant has reached the Reporters.

*J. H. Burts,* Assistant Attorney General, and *C. Edmundson,* for the State.

WHITE, PRESIDING JUDGE. It was no valid objection to the indictment that it alleged conjunctively that the property was taken without the knowledge *and* consent of the owner, instead of charging disjunctively that the taking was, in statutory language, "without the knowledge *or* consent." Such mode of allegation is ordinarily the better practice. (1 Bish. Crim Prac., 3 ed., secs. 585, 586, 587.) The court did not err in overruling defendant's motion to quash.

We are of opinion that the court did err, however, in permiting the witness Gammel to testify, over objections of defendant, what the deceased party, Glover, told him, witness, about the loss of his money. This evidence was hearsay, and the fact that Glover was dead did not render it admissible or legal.

We are further of opinion that, besides this erroneous ruling of the court, the other evidence, as shown in the statement of

facts, is not sufficient to support the conviction; and the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered June 2, 1883